UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| U.S. BANCORP, a Delaware corporation d/b/a U.S. Bank,<br><br>                    Plaintiff,<br><br>    v.<br><br>VIOX SERVICES, INC., an Ohio corporation,<br><br>                    Defendant. | CASE NO. C13-5063 BHS<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant Viox Services, Inc.'s ("Viox") motion for summary judgment (Dkt. 16). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On January 30, 2013, Plaintiff U.S. Bancorp ("U.S. Bank") filed a complaint against Viox for breach of contract and breach of indemnity agreement. Dkt. 1.

On November 27, 2013, Viox filed a motion for summary judgment. Dkt. 16. On December 30, 2013, U.S. Bank responded. Dkt. 16. On January 3, 2013, Viox replied. Dkt. 21.

## II. FACTUAL BACKGROUND

On January 1, 2006, the parties entered into an Independent Contractor Agreement. Dkt. 17, Declaration of Scott Schauermann ("Schauermann Dec."), Exh. 1 ("ICA"). The agreement states that U.S. Bank "hereby retains [Viox] to act as an independent contractor for purposes of performing custodial and maintenance services for the Bank . . . ." *Id*., Art. I. The scope of the "custodial and maintenance services" were to be "consistent with the [Viox's] professional expertise, as required by the Bank" and such "services shall include, without limitation, the items identified in Exhibit A." *Id*., Art. 2, ¶ 2.1. The agreement covered U.S. Bank's locations in Ohio, Kentucky, Tennessee, Indiana, and Illinois. *Id*. at 1.

The parties dispute the scope of services covered by the ICA. Viox contends that the ICA "did not include preventative maintenance, repaving, filling holes, fixing structural defects in the pavement, or any other major services related to the parking lot and ATM drive through areas of the U.S. Bank locations covered by the contract." Dkt. 16 at 2. On the other hand, U.S Bank contends that these services were required by the contract because the explicit services set forth in Exhibit A to the ICA were without limitation. Dkt. 18 at 3. Moreover, U.S. Bank contends that, "as part of [Viox's] custodial and maintenance duties since 2008, Viox performed . . . regular preventative

maintenance inspections . . . for the purpose of identifying maintenance needs and/or hazards that required attention." Dkt. 18 at 3.

On October 6, 2008, the parties entered into a third amendment to the ICA. This amendment added stores in the state of Washington, including U.S. Bank's branch in Olympia, Washington ("Olympia Branch"). Schauermann Dec., Exh. 4. The amendment did not alter the scope of the services provided by Viox.

In July 2009, the parties entered into a fourth amendment to the ICA. In addition to other provisions, this amendment addressed changes to Viox's scope of work. Specifically, Viox contracted to maintain cement and blacktop pavement by agreeing to "patch or fill holes and cracks as appropriate to service levels." Schauermann Dec., Exh. 6 ("Amendment 4"), Schedule-A, §§ 4.2.1.1 & 4.2.1.2. This agreement had a "transition period" from the date of signature to January 1, 2010. *Id*. § B.14.

On September 24, 2009, during the "transition period," Sirena Denbow suffered injuries when she tripped on an empty post hole situated in the Olympia Branch ATM drive-through area. Ms. Denbow required surgery on her hand as a result of her injuries. On August 14, 2012, Ms. Denbow and U.S. Bank entered into a $10,000 settlement agreement to resolve a lawsuit that Ms. Denbow filed against U.S. Bank. U.S. Bank tendered the claim to Viox under the indemnification provision of the ICA, but Viox did not accept the claim or respond to the demand for reimbursement of the settlement amount and associated fees.

# III. DISCUSSION

**A.     Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically

attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     Viox's Motion**

The parties agree that the ICA is governed by Ohio law, but dispute whether the ICA contains ambiguous terms. In Ohio, a term or provision is ambiguous when it "cannot be determined from the four corners of the agreement or where contract language is susceptible to two or more reasonable interpretations." *United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 129 Ohio App. 3d 45, 56 (1998) (citing *Potti v. Duramed Pharmaceuticals, Inc.*, 938 F.2d 641 (6th Cir. 1991)). "[I]f a term cannot be determined from the four corners of a contract, factual determination of intent or reasonableness may be necessary to supply the missing term." *Inland Refuse Transfer Co. v. Browning–Ferris Indus. of Ohio, Inc.*, 15 Ohio St.3d 321, 322 (1984).

In this case, the Court finds that there is an ambiguity in the contract regarding the scope of services. The term "custodial and maintenance services" is susceptible to at least two reasonable interpretations: one interpretation including pavement repair and one interpretation not including pavement repair. Viox, however, provides two arguments in support of its position that pavement repair was not included in the scope of services. First, Viox argues that by specifically adding pavement repair in Amendment 4 shows

that the service was not included in the ICA's original scope of services. Dkt. 21 at 2–3. In other words, Viox is arguing that specifically listing a service in a subsequent amendment to a contract is conclusive evidence of the intent of the parties at the time of the original contract. There is no authority for this proposition. Moreover, Viox has failed to convince the Court that a party to a contract should be held to have waived a reasonable interpretation of a general term in an original contract when the party amends the contract to provide a more specific list of included services. For example, the original scope of work included "General Building Repairs," which was further specified as "Minor Building Repairs." ICA, Exhibit A at 1. Amendment 4 includes nine pages of specific services under the heading of "Building Services & Maintenance" that U.S. Bank deemed "necessary to maintain [U.S. Bank's] buildings . . . ." Amendment 4, Schedule A-4, § 2. Under Viox's proposition, the general "Minor Building Repairs" would exclude most, if not all, of the specific tasks set forth in Amendment 4. This is neither the law nor a reasonable interpretation of the term "custodial and maintenance services." Therefore, the Court declines to accept Viox's position.

Second, Viox argues that the terms "without limitation" and "as required by the Bank" do not create additional duties. Viox contends that these terms "cannot be construed to mean that [Viox] was required to perform services not delineated in Exhibit A to the ICA" because such an interpretation would "creat[e] an open ended universe of affirmative obligations on the part of [Viox]." Dkt. 21 at 3. The law, however, limits Viox's hypothetical universe to "reasonable interpretations" of "custodial or maintenance services." *St. Elizabeth Med. Ctr.*, 129 Ohio App. 3d at 56. If each party submits a

reasonable interpretation, then the factfinder must determine the proper scope of the ambiguous term. *Inland Refuse*, 15 Ohio St.3d at 322. This is the case before the Court, and U.S. Bank has shown that a material question of fact exists for trial.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Viox's motion for summary judgment (Dkt. 16) is **DENIED**.

Dated this 16th day of January, 2014.

                              BENJAMIN H. SETTLE
                              United States District Judge